EUGENE G. IREDALE: SBN 75292
JULIA YOO: SBN 231163
CHELSEA REHERMAN: SBN 343466
IREDALE & YOO, APC
105 West F Street, Fourth Floor
San Diego, CA 92101-6036
TEL: (619) 233-1525
FAX: (619) 233-3221
Attorneys for Plaintiff

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

DINHORA BAEZ GONZALEZ,
an individual,

        Plaintiff,

v.

UNITED STATES, RAY
GARCIA, ENRIQUE CHAVEZ,
DARRELL SMITH, THEODORE
RAMOS, DOES 1-10

        Defendants.

CASE NO.

**COMPLAINT**

1) **Eighth Amendment Deliberate Indifference – Failure to Protect (Bivens)**
2) **Eighth Amendment, Cruel and Unusual Punishment (Sexual Abuse) (Bivens)**
3) **Gender Violence (FTCA) (Cal. Civ. Code § 52.4)**
4) **Sexual Assault (FTCA) (Cal. Civ. Code § 1708.5)**
5) **Battery (FTCA) (California State Law)**
6) **Intentional Infliction of Emotional Distress (FTCA) (California State Law)**
7) **Negligence (FTCA) (California State Law)**
8) **Bane Act (FTCA) (Cal. Civ. Code § 52.1)**

**JURY TRIAL DEMANDED**

**JURISDICTION AND VENUE**

1.     Plaintiff's claims arise under the U.S. Constitution and the Federal Tort Claims Act (FTCA). The Court has federal question jurisdiction over Plaintiff's FTCA claims (which have been administratively exhausted) under 28 U.S.C. § 1331. The <u>Bivens</u> claims provide federal question jurisdiction as well.

2.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) and 28 U.S.C. § 1402(b). Defendants' actions and omissions that give rise to Plaintiff's claims all occurred in this District, at FCI Dublin in the County of Alameda.

**PARTIES**

3.     Between late 2018 and August 12, 2022, Plaintiff Dinhora Baez Gonzalez (Res. No. 62537-298) was incarcerated at FCI Dublin in Dublin, California serving a federal sentence.

4.     The United States employed defendant Ray Garcia as the associate warden and later warden at FCI Dublin.

5.     The United States employed defendant Enrique Chavez at FCI Dublin as a correctional officer.

6.     The United States employed defendant Darrell Smith as a correctional officer at FCI Dublin.

7.     The United States employed defendant Theodore Ramos as a correctional officer at FCI Dublin.

8.     Defendant United States is a governmental entity. During the relevant period, the United States, through the BOP, a federal agency, ran FCI Dublin, a minimum-security federal prison located in Dublin, California. The United States has waived sovereign immunity as to Plaintiff's tort claims based on the conduct of its employees Garcia, Chavez, Smith, and Ramos, pursuant to the FTCA, 28 U.S.C. § 2674 <u>et seq.</u>

///

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COMPLIANCE WITH FTCA CLAIMS PROCEDURE

9.    Plaintiff timely filed her claim pursuant to the FTCA on December 16, 2022. The United States has not acted on that claim, and more than six months has passed since its timely submission.

## DOE ALLEGATIONS

10.    Plaintiff is ignorant as to the true names, identities and capacities of Defendants DOES 1 through 10, inclusive. Therefore, Plaintiff sues these Defendants under the fictitious designation of DOES 1 through 10. Plaintiff will amend this Complaint once their identities have been ascertained as well as facts giving rise to their ability.

11.    Defendants Does 1-10, individually and in their official capacities, at all times relevant herein, were employees for the BOP, acting in their official capacity. These defendants include officers in supervisory positions.

## FACTS

12.    FCI Dublin has a well-deserved reputation as "The Rape Club."

13.    While Plaintiff was a prisoner at FCI Dublin, prison officials including Garcia, Chavez, Smith, and Ramos, subjected Ms. Baez Gonzalez to coerced sexual contact, required her to disrobe and to perform sexually suggestive dances.

14.    Garcia, Chavez, Smith, and Ramos sexually harassed, coerced and abused Ms. Baez-Gonzalez during her sentence at FCI Dublin.

15.    As Warden, Defendant Ray Garcia did "rounds." During those rounds he had Ms. Baez-Gonzalez dance naked and/or in a suggestive fashion. On three separate occasions, Garcia coerced her to fellate him.

16.    Throughout Ms. Baez' sentence, Garcia continued on a regular basis to require her to engage in nude or suggestive dancing in her room while he watched.

17.    Garcia touched Ms. Baez improperly and sexually on more than a dozen occasions, making contact with her breasts and buttocks.

18.    Garcia threatened Plaintiff with retaliation to ensure her silence. He made clear that he had the ability to ensure that any complaint she made would not be investigated and she would be subject to retaliation.

19.    Defendants used intimidation and threats to ensure that Plaintiff remained compliant to their wishes and remained silent about their abuse.

20.    Defendant Garcia told Plaintiff words to the effect of "I'm friend with Putnam of SIS. Nothing will ever happen to me."

21.    Garcia implicitly used his authority as warden to force Plaintiff to submit to his demands.

22.    Defendant Chavez told Plaintiff, "I know you will be deported [after service of sentence]. I can find you."

23.    Defendant Ramos claimed to have "people" in the "cartel from Calexico."

24.    Defendant Dick Smith told Plaintiff, "I know Tijuana (where Plaintiff had lived before incarceration) like the back of my hand.

25.    Correctional Officer Darrell Smith (known at FCI Dublin by the sobriquet "Dirty Dick Smith") would go into Ms. Baez Gonzalez' cell and require her to dance. He would grind against her body with his groin. On two occasions he masturbated in her presence.Correctional Officer Theodore Ramos entered Ms. Baez Gonzalez' cell on multiple occasions to "pat her down." A "pat down" included groping, during which time he frequently grabbed his penis and uttered vulgar comments.

26.    Correctional Officer Enrique Chavez touched her breasts, grabbed her buttocks, and had her sit on his lap.

27.     Other prison personnel, while not engaging in actual sexual conduct, humiliated and harassed Plaintiff with vulgar and insulting statements and <u>double entendres</u>.

28.     One correctional officer, Klinger, for example, said to Ms. Baez; "I will shut you up by putting my dick in your mouth."

29.     The entire culture of the institution was pervaded by an atmosphere of sexual harassment, insults and misogyny.

30.     Women prisoners, including claimant, were constrained to engage in "twerking" contests for the amusement of officials.

31.     The conduct to which claimant was subjected violated both federal criminal law and Plaintiff's federal Constitutional and statutory rights. The tortious conduct included violations of the California state statutes and common law, which give rise to plaintiff's claim under the Federal Fort Claimant Act against the United States for the actions of its employees acting within the course and scope of their employment.

32.     That conduct gives rise to causes of action for assault, battery, sexual assault, intentional infliction of emotional distress and violations of California state law which protect against sexual violence, and violations of the U.S. Constitution's Eighth Amendment.

33.     Throughout the last three decades, the United States has repeatedly ignored incidents of sexual misconduct at FCI Dublin.

34.     Currently, at least six employees have been indicted by the Department of Justice for sexual misconduct and at least nine other employees are on administrative leave pending investigation - the most in U.S. history of the Bureau of Prisons.

35.     The following examples are just a fraction of the incidents of sexual misconduct and violence that have transpired at FCI Dublin:

- In the late 1990's and early 2000's, four male BOP employees were either convicted or pled guilty to sexually abusing female inmates at FCI Dublin.

- According to a report of the U.S. Senate Permanent Subcommittee on Investigations, in the early 2010s, approximately a dozen Dublin employees were removed for their sexual abuse of inmates, "including one who videotaped himself having sex with inmates and stored those tapes in a prison locker. None were arrested."

- In 2019, a Dublin inmate, Victoria Peterson, filed a suit against Officer William Martinez for abusing his power and using excessive force to have sex with her. She sued the warden at the time, Wiley Jenkins, for failing to take disciplinary action against Martinez and allowing him to continue working at FCI Dublin.

- In 2019, an inmate filed a claim against former FCI Dublin chaplain James Highhouse for sexual assault. Highhouse started having unwanted physical contact with her in May of 2018, and although he was ultimately charged with her abuse, prosecutors said he engaged in predatory conduct with at least six women from 2014 to 2019. Highhouse pleaded guilty and was sentenced to seven years in prison.

- In 2020, another inmate was pressured into an ongoing sexual relationship with FCI Dublin Correctional Officer ("C.O.") Enrique Chavez. Chavez kissed her, touched her bare breasts and vagina, and had her touch his penis. Chavez was known to bring inmates into the kitchen closet for "meetings."

- In 2021, Chavez sexually harassed another inmate while was working in the kitchen. He would make comments like, "You' re going to suck my dick right now." Chavez promised her a bonus in return for sexual favors, but she never performed sexual favors for him. Chavez would brush his erect penis up against her, saying "look, it's hard for you."

5
COMPLAINT

- It was common for male employees at FCI Dublin to stare at the inmates while they were naked in the shower.

- C.O. Sergio Saucedo forced an inmate to undress in front of him multiple times.

- C.O. Darrell Smith also known as "Dirty Dick Smith" watched another inmate in the shower. He would also stand outside her cell window and watch her. He was notoriously perverted. He would stare at her buttocks and say "mmm mmm, mmm." She was sexually assaulted by another officer, Isaac Venegas, when he rubbed his penis up against her back and buttocks.

- Another inmate suffered sexual abuse at FCI Dublin between approximately September 2021 and May of 2022. When she arrived, Paramedic Fraser Cohen grabbed her breast. Throughout her incarceration, C.O. Nicholas Ramos consistently watched her in the shower, and both C.O. Ramos and Phillips made her strip, cough, and squat for cavity searches.

- From April through October 2020, FCI Dublin C.O. Klinger manipulated an inmate into performing oral sex and engaging in forced sexual intercourse.

- Another Dublin inmate was forced to engage in oral sex with nurse Jeff Wilson.

- Wilson forced an inmate to show him her breasts. She was sexually harassed by C.O. Saucedo when he forced her to bend over in front of him.

- C.O. Saucedo sexually harassed an inmate by making sexual noises at her and squirting shampoo on her clothing, mimicking ejaculation.

- Another inmate was preyed upon by Disciplinary Hearing Officer (DHO) David Perez for over three years. David Perez would "make out" with her, touch her breasts, caress her, and make her believe he was her boyfriend. When she was on probation, David Perez met with her and had her touch his genitals.

36.    At least 22 FCI Dublin employees, including those who courageously reported and/or acted to prevent instances of sexual violence, have

6
COMPLAINT

been reassigned to other prisons. This mass reassignment drew the attention of Congresswoman Jackie Speier, who wrote a letter to the new Director of the Federal Bureau of Prisons, Colette Peters, requesting information about FCI Dublin's "culture of rampant sexual misconduct and subsequent cover-ups."

37.     The U.S. Department of Justice has long ago promulgated rules, setting out national standards to prevent, detect, and respond to prison rape under the Prison Rape Elimination Act (PREA).

38.     These standards found at 28 C.F.R. Part 115, were established in 2012.

39.     A violation of the PREA does not in and of itself provide a private cause of action for the victim of sexual abuse.

40.     The PREA, however, establishes the standards of conduct and care required of Bureau of Prisons personnel.

41.     The Regulations define "sexual abuse", "voyeurism' and "sexual harassment", as follows:

<u>Sexual Abuse</u>

Sexual Abuse of an inmate, detainee, or resident by a staff member, contractor, or volunteer includes any of the following acts, with or without consent of the inmate, detainee, or resident:

1) Contact between the penis and the vulva or the penis and the anus, including penetration, however slight;

2) Contact between the mouth and the penis, vulva, or anus;

3) Contact between the mouth and any body part where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

4) Penetration of the anal or genital opening, however slight, by a hand, finger, object, or other instrument, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

5) Any other intentional contact, either directly or through the clothing, of or with the genitalia, anus, groin, breast, inner thigh, or

7
COMPLAINT

the buttocks, that is unrelated to official duties or where the staff member, contractor, or volunteer has the intent to abuse, arouse, or gratify sexual desire;

6) Any attempt, threat, or request by a staff member, contractor, or volunteer to engage in the activities described in paragraphs (1)-(5) of this section;

7) Any display by a staff member, contractor, or volunteer of his or her uncovered genitalia, buttocks, or breast in the presence of an inmate, detainee, or resident.

### Voyeurism

1) Voyeurisum by a staff member, contractor, or volunteer.

2) Voyeurism by a staff member, contractor, or volunteer means an invasion of privacy of an inmate, detainee, or resident by a staff for reasons unrelated to official duties, such as peering at an inmate who is using a toilet in his or her cell to perform bodily functions; requiring an inmate to expose his or her buttocks, genitals, or breasts; or taking images of all of part of an inmate's naked body or of an inmate performing bodily functions.

### Sexual Harassment

Sexual harassment includes-

1) Repeated and unwelcome sexual advances, requests for sexual favors, or verbal comments, gestures, or actions of a derogatory or offensive sexual nature by one inmate, detainee, or resident directed toward another; and

2) Repeated verbal comments or gestures of a sexual nature to an inmate, detainee, or resident by a staff member, contractor, or volunteer, including demeaning references to gender, sexually suggestive or derogatory comments about body or clothing, or obscene language or gestures.

42. The PREA standards require a written policy mandating zero tolerance for sexual abuse and sexual harassment.

43. The standards require an agency to assign a PREA coordinator with sufficient time and authority to develope, implement, and oversee agency efforts to comply with PREA standards in all of its facilities.

44.     Each facility "shall designate a PREA compliance manger" with the time and authority needed to coordinate compliance with PREA standards.

45.     The standards set forth the requirement for staffing to provide adequate levels of staffing and appropriate measures to protect inmates from sexual abuse. 28 CFR §115.13(d) requires that:

> (d) Each agency operating a facility shall implement a policy and practice of having intermediate-level or higher-level supervisors conduct and document unannounced rounds to identify and deter staff sexual abuse and sexual harassment. Such policy and practice shall be implemented for night shifts as well as day shifts. Each agency shall have a policy to prohibit staff from alerting other staff members that these supervisory rounds are occurring, unless such announcement is related to the legitimate operational functions of the facility.

46.     28 CFR §115.15 provides in relevant part that:

> (b) As of August 20, 2015, or August 20, 2017 for a facility whose rated capacity does not exceed 50 inmates, the facility shall not permit cross-gender pat-down searches of female inmates, absent exigent circumstances. Facilities shall not restrict female inmates' access to regularly available programming or other out-of-cell opportunities in order to comply with this provision
>
> (c) The facility shall document all cross-gender strip searches and cross-gender visual body cavity searches, and shall document all cross-gender pat-down searches of female inmates.
>
> (d) The facility shall implement policies and procedures that enable inmates to shower, perform bodily functions, and change clothing without nonmedical staff of the opposite gender viewing their breasts, buttocks, or genitalia, except in exigent circumstances or when such viewing is incidental to routine cell checks. Such policies and procedures shall require staff of the opposite gender to announce their presence when entering an inmate housing unit.

47.     28 U.S.C. §115.87 requires, inter alia, the following:

> (a) The agency shall collect accurate, uniform data for every allegation of sexual abuse at facilities under its direct control using a standardized instrument and set of definitions.
>
> (b) The agency shall aggregate the incident-based sexual abuse data at least annually.

(c) The incident-based data collected shall include, at a minimum, the data necessary to answer all questions from the most recent version of the Survey of Sexual Violence conducted by the Department of Justice.

48.    In the Federal Bureau of Prison Annual PREA report for calendar year 2021, BOP director Michael Carvajal wrote this summary of staff on inmate sexual misconduct for BOP facilities:

VI. Staff-on-Inmate Incident-Based Assessment: Data for this category is provided in aggregate form in the below table. Staff incidents are received, assessed, and processed by the Office of Internal Affairs. Thus, facility security-level is not noted, and only the year-end totals are provided in this report. During CY2021, there were no substantiated cases in this category. Please note that investigative cases must be closed prior to inclusion in this report. This report encompasses cases that were closed by March 31, 2022

| Facility | Number of Allegations | Number of Substantiated Cases | Ongoing Investigative Cases |
|---|---|---|---|
| BOP | 315 | 0(0%) | 237 |
| Residential | 25 | 0(0%) | 12 |

49.    Thus, according to Carvajal, for the calendar year 2021 data collection period which encompassed 106 BOP facilities, there were zero substantiated cases of staff on inmate sexual abuse.

50.    Every three years, BOP is required to audit each facility to determine compliance with PREA standards. 28 C.F.R.115. 401 (a)

51.    A PREA Audit Report for FCI Dublin was completed and signed on June 14 2017.

52.    That report found that FCI Dublin met or exceeded PREA standard.

53.    The next final PREA audit report was March 12, 2022.

54.    The 2022 audit report claimed that FCI Dublin was fully compliant with all 45 PREA standards.

55.    This audit was completed after Ray Garcia had been "walked out" of FCI Dublin for his repeated sexual abuse of inmates.

10
COMPLAINT

56. The audit relied in material respects on memoranda from Warden Garcia to find compliance with PREA standards, even though Garcia was on leave due to his sexual abuse of inmates.

57. The BOP's conduct of data review and audits is deeply flawed. In 2022, the U.S. Senate Permanent Subcommittee on Investigations issued a report on Sexual Abuse of Female Inmates in Federal Prisons.

58. The report found that:
- BOP employees sexually abused female prisoners in at least two-thirds (19 out of 29 facilities) of federal prisons that have held women over the past decade.
- BOP has failed to successfully implement the Prison Rape Elimination Act ("PREA"). It failed to prevent, detect, and stop recurring sexual abuse in at least four federal prisons, including abuse by senior prison officials. At FCI Dublin, for example, the former Warden and Chaplain both sexually abused female prisoners.
- BOP management failures enabled continued sexual abuse of female prisoners by BOP's own employees.
- BOP Office of Internal Affairs' ("BOP OIA" or "OIA") investigative practices are seriously flawed. There is currently a backlog of 8,000 internal affairs cases, including at lead hundreds of sexual abuse cases.

59. The Subcommittee Report noted in relevant part:

In at least four BOP facilities, multiple women endured ongoing sexual abuse for months or years. Beginning in June 2021, the Department of Justice ("DOJ") indicted five BOP employees at California's Federal Correctional Institution ("FCI") Dublin – including the Warden and the Chaplain – for repeated sexual abuse of at least eight female prisoners under their supervision. The horrific abuse at FCI Dublin was not unique among BOP's prisons. BOP failed to detect and prevent repeated sexual abuse in at least three other facilities before FCI Dublin.

60. The report stated:

The Subcommittee found that the mechanisms that BOP employs to identify and prevent sexual abuse of female prisoners by BOP employees are ineffective. Audits intended to assess sexual

11
COMPLAINT

abuse in prisons (known as "PREA audits") found that FCC Coleman and FCI Dublin were compliant with every PREA standard during the time when senior BOP officials admitted to the Subcommittee that there was a "culture of abuse". Further, BOP failed to systematically analyze PREA data, missing a key opportunity to identify problematic facilities or employees.

BOP Office of Internal Affairs, the component of BOP responsible for investigating staff misconduct, has failed to timely investigate and resolve allegations of employee misconduct concerning both sexual abuse of female prisoners and other matters…

61.   The Subcommittee report summarized one of its key findings:

BOP failed to detect, prevent, and respond to sexual abuse of female prisoners in its custody. BOP failed to systematically analyze PREA complaint data and relied on flawed PREA audits that missed sexual abuse of female prisoners by male BOP employees at FCC Coleman and FCI Dublin. At FCC Coleman, BOP transferred all female prisoners out of the prison two dates before the auditor's on-site inspection at a time when multiple women were being abused. At FCI Dublin, the former PREA compliance officer, responsible for training supervisors on the PREA requirements and coordinating the PREA audit, was convicted of sexually abusing female prisoners on December 8, 2022.

62.   The report noted that Garcia had been FCI Dublin's PREA compliance officer, who had trained BOP personnel on PREA requirements and coordinated the PREA audit.

63.   18 U.S.C. §2243(b) makes it a felony – punishable by up to 15 years of imprisonment –  for a BOP employee to "knowingly [engage] in a sexual act with another person who is in (1) official detention; and (2) under the custodial, supervisory, or disciplinary authority of the [BOP employee] so engaging.

64.   BOP "staff sexual relations with inmates is always illegal" as there is no "consent" defense to a violation of 18 U.S.C. §2243(b).

65.   As OIG explained in a 2005 report, this is because the "inherently unequal" relationship between BOP employees and prisoners precludes prisoners

12
COMPLAINT

from having "the same ability as staff members to consent to a sexual relationship."

## FIRST CAUSE OF ACTION
### EIGHTH AMENDMENT, DELIBERATE INDIFFERENCE - FAILURE TO PROTECT (Against GARCIA and DOES 1-10, inclusive, in their individual capacities) (*Bivens*)

66.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

67.    Plaintiff brings this claim against GARCIA and DOES 1-10, inclusive, in their individual capacities under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the United States Constitution.

68.    Under the Eighth Amendment, Warden Garcia had an obligation to protect plaintiff from assault and sexual abuse.

69.    The subjection of Plaintiff's person to Garcia's abuse and that of the other defendants constituted punishment imposed as an incident of her confinement and violated the Eighth Amendment's ban on cruel and unusual punishment. Garcia's conduct itself resulted in inhumane conditions of confinement.

70.    Garcia acted with deliberate intent and/or deliberate indifference when he, the person responsible for Plaintiff's safety and humane confinement, criminally abused her.

71.    This gives rise under established law (*Farmer v. Brennan* 511 U.S. 825 (1994)) to a direct constitutional cause of action against Garcia himself.

72.    Garcia, moreover is liable for his deliberate indifference to the sexual abuse perpetuated by Garcia, Chavez, Smith and Ramos of which he was actually aware, or to the existence of which Garcia was deliberately indifferent.

73.    *Farmer v. Brennan* provides a well-established *Bivens* cause of action for sexual violence resulting from prison official's culpable conduct and deliberate indifference.

74.    At all material times, GARCIA and DOES 1-10, inclusive, were federal employees, acting under the color of federal authority with respect to the allegations set forth above.

75.    GARCIA and DOES 1-10, inclusive, deprived Plaintiff of her right to be free from cruel and unusual punishment by failing to protect her from a substantial risk of serious harm from sexual abuse by Garcia, Chavez, Smith, and Ramos by acting in conscious disregard of that known risk.

76.    GARCIA purposefully denied Plaintiff protection from the known and substantial risk of serious harm of sexual abuse.

77.    Based on his position and behavior in the prison, GARCIA knew, or should have known, that he and Chavez and Ramos and Smith were sexually abusing Plaintiff.

78.    GARCIA and DOES 1-10, inclusive, failed to take immediate action to protect Plaintiff, including by separating her from her abusers, in violation of 28 C.F.R. § 115.62.

79.    GARCIA and DOES 1-10, inclusive, did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, or to guarantee her safety even though a reasonable person in the circumstances would have appreciated the high degree of risk – if not the certainty of harm – involved.

80.    GARCIA and DOES 1-10, inclusive, therefore acted with deliberate indifference to substantial risk of sexual abuse in violation of the Eighth Amendment, subjected Plaintiff to dangerous and debasing conditions of confinement, including sexual abuse, and violated her fundamental rights to safe and humane confinement. This cruel and unusual punishment caused Plaintiff physical, mental, emotional, and constitutional injuries.

81.    The conduct of GARCIA and DOES 1-10, inclusive, was malicious, oppressive, reckless, and callous, entitling Plaintiff to punitive damages.

///

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## SECOND CAUSE OF ACTION
**EIGHTH AMENDMENT, CRUEL AND UNUSUAL PUNISHMENT (SEXUAL ABUSE) (*Bivens*)**
**(Against Garcia, Chavez, Smith, and Ramos, in their individual capacities)**

82.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

83.    Plaintiff brings this claim under the Cruel and Unusual Punishment Clause of the Eighth Amendment to the U.S. Constitution against, GARCIA, Chavez, Smith, and Ramos, in their individual capacities.

84.    At all material times Garcia, Chavez, Smith, and Ramos, inclusive, were federal employees of the BOP at FCI Dublin, acting under the color of federal authority with respect to the allegations in this complaint.

85.    The Eighth Amendment forbids the imposition of cruel and unusual punishments.

86.    Defendants Garcia, Chavez, Smith and Ramos by their conduct imposed cruel and inhumane treatment on Plaintiff.

87.    Their abuse created inhumane conditions of confinement for Plaintiff.

88.    Plaintiff committed a federal crime for which she had been imprisoned. Her sentence did not include the subjection to sexual assault, abuse and degrading treatment. Each of the four defendants, through their conduct violated the Eighth Amendment with deliberate intent and/or deliberate indifference.

89.    Defendants violated Plaintiffs right to be free from cruel and unusual punishment by repeatedly sexually abusing her while she was incarcerated as an inmate at FCI Dublin.

90.    Defendants' sexual abuse of Plaintiff occurred under coercive circumstances.

91.    Defendants' acts caused Plaintiff severe physical, mental, and emotional harm.

92.    Garcia, Chavez, Smith, and Ramos, inclusive, acted with malice and oppression, and their conduct constitutes a reckless or callous disregard of Plaintiffs rights, entitling Plaintiff to punitive damages.

**THIRD CAUSE OF ACTION**
**GENDER VIOLENCE (FTCA Action against the United States)**
**(Cal. Civ. Code § 52.4)**

93.    Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

94.    Plaintiff brings this claim under the Federal Tort Claims Act for gender violence under California Civil Code § 52.4 against the United States based on the conduct of its employees Garcia, Chavez, Smith and Ramos.

95.    The United States is named as a defendant for the acts of defendants Garcia, Chavez, Smith and Ramos under the Federal Tort Claims Act.

96.    The individual federal employees engaged in the wrongful conduct alleged while in the course and scope of their employment as federal employees.

97.    Their positions as correctional officers or prison warden were essential to their commission of tortious misconduct, which could not have occurred absent their federal employment.

98.    Under California law, any person subjected to gender violence may bring a civil action for damages. Gender violence is a form of sex discrimination that includes a physical intrusion or invasion of a sexual nature under coercive conditions.

99.    Defendants discriminated against Plaintiff based on her gender when they repeatedly sexually abused her, by physically subjecting her to sexual acts.

100.    By repeatedly subjecting Plaintiff to sexual acts, GARCIA, CHAVEZ, SMITH and RAMOS caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

## FOURTH CAUSE OF ACTION
### SEXUAL ASSAULT (FTCA) (Cal. Civ. Code § 1708.5)
### (Against the United States)

101.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

102.   Plaintiff brings this claim for sexual assault under the Federal Tort Claims Act for violation of California Civil Code§ 1708.5 against the United States based on the conduct of its employees Garcia, Chavez, Smith and Ramos.

103.   Garcia, Chavez, Smith and Ramos violated Plaintiffs right to be free from sexual assault by repeatedly sexually abusing her while she was incarcerated.

104.   Garcia's, Chavez', Smith's and Ramos' sexual abuse of Plaintiff, was deeply offensive to her personal dignity and would offend a person of ordinary sensitivity.

105.   Defendants employees subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

106.   By intentionally subjecting Plaintiff to sexual acts, Garcia, Chavez, Smith and Ramos acted maliciously, in a manner that is deeply offensive to human dignity and void of any penological justification.

107.   By repeatedly subjecting Plaintiff to sexual acts defendants caused her to suffer physical, mental, and emotional injuries, as well as injuries to her personal dignity.

## FIFTH CAUSE OF ACTION
### BATTERY (FTCA) (California State law)

108.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

109.   Plaintiff brings this claim for battery under the Federal Tort Claims Act based on California state law against the United States for the conduct of its employees Garcia, Chavez, Smith and Ramos.

110.   Defendants' employees committed battery against Plaintiff by repeatedly sexually abusing her while she was incarcerated as a minimum-security inmate at FCI Dublin.

111.   The sexual abuse of Plaintiff, an inmate was deeply offensive to her personal dignity, would offend a person of ordinary sensitivity, and was unwarranted by the social usages in prison when the contact was made.

112.   Defendant's employees subjected Plaintiff to these sexual acts with the intent to cause a harmful or offensive contact with Plaintiff's person.

## SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (FTCA)(California State law)
### (Against the United States)

113.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

114.   Plaintiff brings this claim under the Federal Tort Claims Act for the intentional infliction of emotional distress against the United States based on the conduct of Garcia, Chavez, Smith and Ramos.

115.   These officers engaged in outrageous conduct by repeatedly subjecting Plaintiff to sexual acts while she was incarcerated as an inmate in his employer's custody. They abused their authority over Plaintiff and their power to affect her in a manner that was beyond all bounds of decency and must be regarded as atrocious and utterly intolerable in a civilized society.

116.   The employees' sexual abuse caused Plaintiff to suffer, and continue to suffer, severe emotional distress, including fear, depression, and anxiety. This distress was so substantial and enduring that no reasonable person in a civilized society should be expected to endure it.

117.   Defendant's employees intended to cause Plaintiff this emotional distress because they knew that emotional distress was likely to result from their sexual abuse of an inmate.

## SEVENTH CAUSE OF ACTION
### NEGLIGENCE (FTCA) (California state law)
### (Against the United States)

118.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

119.   Plaintiff brings this claim against the United States under the FTCA based on the actions and/or omissions of Garcia, Chavez, Smith and Ramos taken while working at FCI Dublin in their capacity as employees of the BOP and acting within the scope of their employment, with the permission and consent of the United States.

120.   At all material times, Plaintiff was an inmate in the custody of the BOP, a federal agency of the United States in possession and control of FCI Dublin.

121.   The BOP's Personal Conduct rules for staff disallow any sexual activity with an inmate, and state that an employee may not allow another person to engage in such behavior. It explicitly states that there is no such thing as consensual sex between staff and inmates.

122.   Garcia, Chavez, Smith and Ramos had a duty of care to Plaintiff.

123.   Sexual abuse of Plaintiff was reasonably foreseeable to Garcia because, amongst other things, he was sexually abusing Plaintiff.

124.   Garcia failed to supervise and operate FCI Dublin in a manner that would have prevented Chavez, Smith, and Ramos' ongoing sexual abuse of Plaintiff.

125.   Garcia did not take reasonable, available measures to abate the risk of sexual abuse to Plaintiff, and to guarantee her safety, even though a reasonable administrator would have complied with PREA regulations regarding proper prison operations, including adequately monitoring work programming and correctional officer assignments.

19
COMPLAINT

126.   The sexual abuse of Plaintiff occurred as the direct and proximate result of the supervisory negligence of Garcia.

127.   Injuries and relief sought. Plaintiff suffered a physical violation, a violation of her liberty interest in being free from sexual abuse, injury from being denied freedom of movement and programming, and severe mental and emotional anxiety and distress, and will continue to suffer severe mental and emotional anxiety and distress in the future.

128.   Plaintiff seeks the following relief for her injuries: non-economic damages consisting of past physical injury, past and future mental pain and suffering, mental anguish, emotional distress, and for offenses to her personal dignity.

## EIGHTH CAUSE OF ACTION

### (FTCA) Bane Act (California Civil Code 52.1)

129.   Plaintiff repeats and incorporates by reference every allegation contained in the preceding paragraphs as if fully set forth herein.

130.   Defendant United States, by the actions of its employees Garcia, Chavez, Smith and Ramos, while plaintiff was in custody, by threat, intimidation, and/or coercion, violated Plaintiff's rights under California Civil Code § 52.1 by interfering with Plaintiff's right to protection from bodily restraint, harm, and insult, as secured by California Civil Code § 43; her rights under the California Constitution to be free of the imposition of punishment without due process, cruel and unusual punishment, and the right to be free from sexual violation; and her right under the Eighth amendment to be free of cruel and unusual punishment.

131.   As a proximate result of the acts of Garcia, Chavez, Smith, and Ramos, plaintiff sustained damage and injury.

///

///

///

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays that this Court grant the following:

1.      Compensatory damages for injuries caused by defendants, including injury to personal dignity, physical injury, pain, discomfort, fears, anxiety, and other mental and emotional distress suffered by Plaintiff and for similar suffering reasonably certain to be experienced in the future, in an amount to be determined at trial;

2.      Punitive damages for malice, oppression, fraud, and reckless and callous disregard of Plaintiffs rights for the *Bivens* causes of action against Garcia, Chavez, Smith, and Ramos.

3.      An award to Plaintiff of reasonable costs; and

4.      An award to Plaintiff of reasonable attorneys' fees pursuant to 28 U.S.C. § 2678 and Cal. Civ. Code § 52.4; and

5.      Such other and further relief as the Court may deem fit and proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to the Seventh Amendment of the Constitution, and Rule 38, Federal Rules of Civil Procedure, Plaintiff demands a jury trial for the first two *Bivens* causes of action.

Respectfully submitted,

June 16, 2023

**IREDALE AND YOO, APC**

*/s/Eugene Iredale*

EUGENE IREDALE
JULIA YOO
CHELSEA REHERMAN
Attorneys for Plaintiff

COMPLAINT